IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| GREGORY JACKSON, | Case No. 1:16 CV 1852 |
| Petitioner, | |
| | JUDGE JOHN R. ADAMS |
| v. | |
| | MAGISTRATE JUDGE |
| MARGARET BRADSHAW, Warden, | THOMAS M. PARKER |
| Respondent. | |
| | **REPORT AND RECOMMENDATION** |

**I.    Introduction**

Petitioner Gregory Jackson has filed in this Court a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his convictions in *State v. Jackson*, Case No. 2011-CR-560D. ECF Doc. No. 1. Respondent Margaret Bradshaw[1] has moved to dismiss the petition on the ground that it is significantly time-barred by the one-year statute of limitations contained in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). ECF Doc. No. 5. Jackson has filed no response in opposition.

Because Jackson's claims are barred by AEDPA's statute of limitations and there are no grounds for tolling the expiration of the statute of limitations, I recommend that the Court GRANT Respondent's motion to dismiss.

---

[1] When Jackson filed his habeas petition, Margaret Bradshaw was warden of the Richland Correctional Institution, where Jackson is incarcerated. Dave Marquis is now the warden of that facility. ECF Doc. No. 5 at Page ID#31 n.1.

## II. Factual Background

Ohio's Fifth District Court of Appeals set forth the following facts underlying Jackson's convictions:[2]

> {¶ 2} Jackson was released on parole in September 2010 from prison after serving 20 years for murder. Parole officer Kenneth Kaufman ("Kaufman") supervised him. Jackson moved recently to 628 Johns Avenue with his wife Tonya Jackson. ("Tonya").
>
> {¶ 3} About August 16, 2011, Gerado Wilson called 9–1–1 to report that a man named "Greg" whose nickname was "Dirty" robbed him at gunpoint. He said that Greg had been recently released from prison after serving 20 years for murder. Wilson described his assailant's car.
>
> {¶ 4} On the morning of August 17, 2011, a caller who refused to give his identity called 9–1–1 to say he had just seen a man get out of a maroon Chevrolet Suburban brandishing a gun on Johns Avenue. He also gave the license plate number on the car as FGS 8760.
>
> {¶ 5} The police dispatcher ran the license number and it came back to a red Chevrolet Suburban owned by Jackson, who had the alias "Dirty." When officers were dispatched to the scene, the dispatcher reminded them the likely connection between the armed robbery reported the previous day and the man with a gun on Johns Avenue to which they were dispatched.
>
> {¶ 6} Officers also asked that Jackson's parole officer be contacted to assist them. The dispatcher arranged for Kaufman to come to the scene. The officers found Jackson's Suburban parked on Johns Avenue near 638 and 642 Johns Avenue, but were not sure in which house Jackson could be found. They also feared to enter with an armed suspect. Officers obtained Jackson's telephone number from Kaufman and called the number in an attempt to have Jackson come out of the house.
>
> {¶ 7} The police called three times and spoke to both Jackson and Tonya. Shortly thereafter, a police officer who had been stationed behind the houses saw Jackson stick his head out the side door at 628 Johns Avenue. Jackson sprinted away when he saw the officer. Jackson ran into Kaufman and a police officer before he could get more than 20 feet from the door. They arrested Jackson and placed him in a cruiser.

---

[2] These facts "shall be presumed to be correct," and petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 360-61 (6th Cir. 1998).

2

{¶ 8} Jackson had come out of the house without the reported gun, and officers knew there was at least one additional person in the house. They decided to do a "protective sweep" through the house to see if there was anyone else in the house.

{¶ 9} The officers brought Tonya out on the porch of the home while officers looked through the first and second floor and the basement. No other persons were found, and no incriminating evidence was discovered. The house was full of boxes and totes filled with household goods, showing evidence of a recent move.

{¶ 10} Parole office Kaufman had been instructed by his supervisor to search the house from top to bottom for the gun under the parole officer's authority to search a parolee's residence. Officer Rich Miller recognized Tonya from a previous encounter and began talking to her. He explained to her that they had to search for the gun described in the reports and asked her permission to search. Tonya said she did not want all the drawers and boxes in her house dumped out on the floor. Officer Miller promised her they would not do that.

{¶ 11} Officer Miller called the dispatcher to have a consent to search form sent to the house. Officer Miller reviewed the consent form with Tonya. Tonya filled in her name and address at the top and signed the consent form. Officer Miller filled in the date and witnessed Tonya's signature.

{¶ 12} During the search of the house, in Jackson's bedroom, Officer Vanosdale found a backpack with a handgun and drugs as well as a shaving kit with another handgun. Bill Adams of the Mansfield Police Department Crime Laboratory was then called to the scene to photograph and seize the evidence, which he did. Also found inside the backpack in Jackson's bedroom was latex gloves, bullets, scales, and various small bags.

{¶ 13} The guns were found to be operable. The drugs found were tested and found to be 6.16 grams of marijuana and 11.85 grams of heroin.

*State v. Jackson*, 2012-Ohio-5548, ¶¶ 2-13.

### III. Relevant State Procedural History

#### A. Trial Court

On April 25, 2014, a Richland County grand jury indicted Jackson on two counts of having weapons while under a disability, in violation of Ohio Rev. Code § 2923.13(A)(2), and one count of possession of heroin, in violation of Ohio Rev. Code § 2925.11(A). ECF Doc. No. 5-1 at Page ID# 58-59.

3

Prior to trial, Jackson moved to suppress evidence seized at his residence. ECF Doc. No. 5-1 at Page ID# 61-65. After conducting an evidentiary hearing on the matter, the trial court denied the motion. ECF Doc. No. 5-1 at Page ID# 66-70.

After a two-day trial, the jury found Jackson guilty on all charges. *Jackson*, 2012-Ohio-5548, ¶ 16. On March 7, 2012, the trial court sentenced Jackson to serve a term of eight years on the drug possession charge and three year terms on each weapons charge, all to be served concurrently, for an aggregate prison term of eight years. ECF Doc. No. 5-1 at Page ID# 71-73.

**B.     Direct Appeal**

Jackson, through new counsel, filed a timely notice of appeal in the Fifth District Court of Appeals. ECF Doc. No. 5-1 at Page ID# 74. Jackson's appellate brief presented five assignments of error:

1. The trial court erred in denying the Defendant's motion to suppress when the Appellant's Fourth Amendment rights were violated by a warrantless search.

2. The trial court erred in admiting [sic] the testimony related to the lab results of tests performed without the testimony of the actual lab techician [sic] who conducted the tests violating the Defendant's right to confrontation.

3. The Appellant's trial attorney provided ineffective assistance by failing to object to the testimony of Adams and admission of testimony related to the lab results of tests performed without the testimony of the actual lab techician [sic] who conducted the tests.

4. Appellant's conviction is against the manifest weight of the evidence.

5. The trial court erred in denying the Appellant's motions for judgment of acquittal, because the evidence is insufficient to support the verdict, and in so doing, denied the Appellant due process of law.

ECF Doc. No. 5-1 at Page ID# 79 (capitalization modified). On November 29, 2012 the Ohio Court of Appeals affirmed the judgment of the trial court. ECF Doc. No. 5-1 at Page ID# 131-62.

Jackson, through counsel, filed a timely notice of appeal to the Ohio Supreme Court. ECF Doc. No. 5-1 at Page ID# 163-65. His memorandum in support of jurisdiction asserted a single proposition of law:

> The Appellant's trial attorney provided ineffective assistance by failing to object to the testimony of Officer Adams and admission of testimony related to the lab results of tests performed without the testimony of the actual lab technician who conducted the tests[,] and the trial court erred in admitting the testimony related to the lab results of tests performed without the testimony of the actual lab technician who conducted the tests[,] violating the Appellant's right to confrontation.

ECF Doc. No. 5-1 at Page ID# 167. The Supreme Court declined jurisdiction over the case on March 27, 2013. ECF Doc. No. 5-1 at Page ID# 217.

### C. Application to Reopen Direct Appeal

On July 11, 2013, Jackson, acting *pro se*, filed a motion for leave to file a delayed application to reopen his direct appeal pursuant to Ohio Appellate Rule 26(B) in the state appellate court. ECF Doc. No. 5-1 at Page ID# 218-47. Jackson's motion presented thirteen assignments of error; and he alleged that he had been denied the effective assistance of appellate counsel for not raising them on direct appeal:

1. Appellant was denied the effective assistance of trial counsel where trial counsel failed to object to the admission of the lab report on the grounds that the lab report failed to provide Defendant adequate notice, as required by law, that if a demand is not made for the testimony of the signer of the report, the report will be prima facie evidence of the test results, pursuant to [Ohio Rev. Code] § 2925.51(C)[.]

2. Appellant was denied the effective assistance of trial counsel where trial counsel failed to consult with Defendant regarding waiving his constitutional right to confront the lab technician who tested the drugs in

5

      question, and, where trial counsel failed to inform Defendant that the failure to demand such testimony would result in the lab report being admissible as prima facie evidence[.]

3. Appellant was denied his due process right to a fair trial due to prosecution misconduct where the State failed to comply with its obligation under Ohio Revised Code [] § 2925.51[.]

4. Appellant was denied the effective assistance of trial counsel where counsel failed to demand the testimony of the lab technician who tested the drugs in question, where said testimony was necessary in light of the fact that there is a question of fact as to whether the drug tested was cocaine or heroin[.]

5. Appellant was denied the effective assistance of trial counsel where trial counsel failed to move to suppress the drug substance evidence where it was clear that the substance was cocaine and not heroin[.]

6. The trial court erred and denied Appellant a fair trial by admitting, over objection from the prosecutor, hearsay evidence at trial[.]

7. Appellant was denied his due process right to a fair trial due to prosecutor misconduct where the prosecuting attorney knowingly used false evidence, and evidence that was tampered with[.]

8. Appellant was denied the effective assistance of trial counsel where trial counsel admitted and/or used hearsay evidence during trial thereby denying Appellant his Sixth and Fourteenth Amendment Confrontation Clause right.

9. The trial court erred and denied Appellant a fair trial by failing to give the jury final instructions after closing arguments as required pursuant to Crim.[R. Civ. P. 30.]

10. Appellant was denied the ineffective [sic] assistance of trial counsel where trial counsel failed to object to the trial court failing to give jury instructions after closing arguments, as required pursuant to Crim. [R. Civ. P. 30.]

11. Appellant was denied a fair trial due to prosecution misconduct where the prosecuting attorney knowingly and intentionally used false evidence relating to the weapons, in order to obtain a conviction[.]

6

12. Appellant was denied a fair trial due to misconduct of the Police

13. Department where they [sic] instentional [sic] failed to collect evidence that would have shown that the Defendant was actually and factually innocent of the charges[.]

14. The Appellant was denied the right to a fair trial where the State witness, Richard Clapp, presented perjured testimony to the jury[.]

ECF Doc. No. 5-1 at Page ID# 220-27 (capitalization modified).

On August 22, 2013, the state appellate court denied Jackson's motion, because he did not file it within the prescribed ninety-day period after appellate judgment and because he did not demonstrate good cause for not meeting the deadline. ECF Doc. No. 5-2 at Page ID# 274-78. Jackson's request for reconsideration was denied. ECF Doc. No. 5-2 at Page ID# 279.

Jackson, acting *pro se*, appealed the court of appeals' judgment to the Ohio Supreme Court. ECF Doc. No. 5-2 at Page ID# 280-81. His memorandum in support of jurisdiction asserted three propositions of law:

1. Whether appellant showed good cause, as required by [Ohio App. R.] § 26(B)(1), why his application for [r]eopening was untimely due to his counsel of record was both his [d]irect [a]ppeal counsel and Ohio Supreme Court counsel.

2. Whether appellant was denied the effective assistance of appellate counsel where counsel failed to advise appellant on the available remedy of [Ohio App. R.] § 26(B) application and the time frame in which to file the application.

3. Whether appellant was denied the effective assistance of appellate counsel where counsel failed to raise on [d]irect [a]ppeal meritorious issues that would have resulted in reversal of the conviction and sentence.

7

ECF Doc. No. 5-2 at Page ID# 283.  The Supreme Court declined jurisdiction over the case on December 24, 2013.  ECF Doc. No. 5-2 at Page ID# 299.

### D. Post-Conviction Proceedings

On March 11, 2014, Jackson filed a *pro se* motion for leave to file a delayed motion for new trial and/or post-conviction relief.  ECF Doc. No. 5-2 at Page ID# 300-04.  Jackson's proposed motion asserted four claims for relief:

1. Due to the ineffective assistance of counsel, Defendant could not with reasonable diligence have discovered and produced the new evidence at trial[.]

2. Due to prosecution misconduct where the prosecutor knowingly presented false testimony of State witness Richard Clapp, Defendant was denied a fair trial[.]

3. The Defendant is actually innocent of possession of heroin (actual innocence claim)[.]

4. Request for post-conviction relief is filed under [Ohio Rev. Code] § 2953.21, and ineffective assistance of counsel[.]

ECF Doc. No. 5-2 at Page ID# 309-11 (capitalization modified).  On November 14, 2014, the trial court dismissed Jackson's motion for post-conviction relief because it was untimely and made the alternative finding that it lacked merit.  ECF Doc. No. 5-2 at Page ID# 343-48.

Jackson, again acting *pro se*, filed a timely notice of appeal with the state court of appeals.  ECF Doc. No. 5-2 at Page ID# 349.  Jackson's appellate brief raised two assignments of error:

1. The trial court erred in failing to grant Defendant-Appellant's motion for new trial.

8

    2.    The trial court erred when it failed to conduct an evidentiary hearing on Defendant-Appellant's motion for new trial.

ECF Doc. No. 5-2 at Page ID# 366, 371 (capitalization modified). On July 17, 2015, the state appellate court affirmed the judgment of the trial court. ECF Doc. No. 5-2 at Page ID# 422-35. *See also State v. Jackson*, 2015-Ohio-2941.

On September 14, 2015, Jackson filed a notice of appeal and motion for delayed appeal in the Ohio Supreme Court. ECF Doc. No. 5-2 at Page ID# 436-55. The Supreme Court denied Jackson's motion and dismissed the case on November 10, 2015. ECF Doc. No. 5-2 at Page ID# 456.

## IV.    Federal Habeas Corpus Petition

Jackson filed his *pro se* petition for writ of habeas corpus in this Court on July 21, 2016. ECF Doc. No. 1. His petition raises twenty-three grounds for relief:

    1.    Petitioner was denied his Fourth Amendment protection right against warrantless search—evidence should have been suppressed[.]

        Supporting Facts: The Mansfield Police Department did not have probable cause or reasonable suspicion to search Petitioner's home[.] The Mansfield Police Department went inside the [P]etitioner's home and searched it without a warrant[.]

    2.    The trial court erred and denied due process to fair hearing in admitting testimony related to lab results of test without the actual lab technician who conducted [the] test testi[fying] regarding results[.]

        Supporting Facts: The trial court admitted into evidence affidavits reporting the results of an alleged forensic analysis without requiring the actual lab technician to testify on his findings[.]

    3.    The appellant was denied the effective assistance of trial counsel where counsel failed to object to the testimony of Adams and admission of testimony related to the lab results of test performed without the testimony of the actual lab technician who conducted the test:

> Supporting Facts: Trial counsel failed to object to the testimony and laboratory report as violation of confrontation under the Sixth Amendment.

4. The evidence was insufficient as a matter of law to support the verdict, and in doing so, denied the appellant due process of law

Supporting Facts: (1) Evidence concerning the identity and weight of the drugs was not properly admitted. (2) There was no evidence connecting the Appellant to the location where the drugs and weapons were found[.] (3) The State presented all circumstantial evidence connecting appellant to the weapons and drugs. (4) The jury lost its way regarding the credibility of the witness, especially the Mansfield Police Officers. (5) The evidence weighed heavily against the conviction because appellant did not possess the drugs or the weapons. The State failed to simply present any evidence proving that the drugs and weapons were his.

5. Petitioner was denied due process right to a fair appellate consideration where the Ohio appellate court applied a procedural time bar where it was clear from the record that petitioner established good cause for the untimely filing of the Appellate Rule [] 26(B) application:

Supporting Facts: Petitioner filed an Appellate Rule 26(B) application outside of the 90-day time limit. Petitioner argued as cause for the untimely filing that he could not file the application within the time frame because his appellate counsel not only represented him on direct appeal, but also in the Ohio Supreme Court. Shortly after the appellate counsel withdrew, petitioner filed the [Appellate Rule] 26(B) application. The Court of Appeals denied the application on the grounds that petitioner failed to establish good cause for the untimely filing.

6. Petitioner was denied the effective assistance of appellate counsel on firect [*sic*] appeal where counsel failed to raise meritorious issues that would have resulted in the reversal of the conviction and sentence[.]

Supporting Facts: Petitioner asserts that he was denied the effective assistance of appellate counsel where counsel failed to raise the following issues that are meritorious and would have resulted in the reversal of the conviction and sentence: NOTED, these issues were raised in the [Appellate Rule] 26(B) Application, and on Appeal to the Ohio Supreme Court.

10

7.   Petitioner was denied the effective assistance of trial counsel where trial counsel failed to object to the admission of the lab report on the grounds that the lab report failed to provide defendant with adequate notice, as required by law, that if a demand is not made for the testimony of the signer of the report, the report will be prima facie evidence of the test results, pursuant to Ohio Revised Code Section § 2925.51.

8.   Petitioner was denied the effective assistance of trial counsel where counsel failed to consult with defendant regarding waiver of Constitutional rights to confront the lab technician who tested the drugs in question, and, where trial counsel failed to inform defendant that the failure to demand such testimony would result in the lab report being admissible as prima facie evidence[.]

9.   Petitioner was denied his due process right to a fair trial due to prosecution misconduct where the state failed to comply with its obligation under Ohio Revised Code Section § 2925.51.

10.  Petitioner was denied the effective assistance of trial counsel where counsel failed to demand the testimony of the lab technician who tested the drugs in question.

11.  Petitioner was denied the effective assistance of trial counsel where counsel failed to move to suppress the drugs substance evidence where it was clear that the original substance had been tampered with by Mansfield Police Department/Officers.

12.  Petitioner was denied the effective assistance of trial counsel where counsel admitted and/or used hearsay evidence during trial thereby denying defendant his Sixth and Fourteenth Amendment Confrontation Clause right[.]

13.  Petitioner was denied his Fourteenth Amendment due process right to a fair trial where the trial court admitted, over objection, hearsay testimony evidence at trial[.]

14.  Petitioner was denied his due process right to a fair trial due to prosecution misconduct where the prosecutor knowingly used false evidence, and evidence that had been tampered with[.]

15. The petitioner was denied due process right to a fair trial where the trial court failed to give the jury final instructions after closing arguments as required pursuant to [Criminal Rule] 30[.]

16. Petitioner was denied due process right to a fair trial based on prosecution misconduct where the prosecutor knowingly and intentionally used false evidence relating to the weapons in order to obtain a conviction[.]

17. Petitioner was denied due process right to a fair trial based on police misconduct where the police officer intentionally failed to collect evidence that would have shown the defendant's actual and factual innocence[.]

18. Petitioner was denied the effective assistance of appellate counsel where counsel failed to inform defendant of the available [Appellate Rule] 26(B) remedy after withdrawing from defendant's case. Thus, advising defendant of the adequate available remedy prior to withdrawing from defendant's case:

19. Petitioner was denied the effective assistance of trial counsel where counsel failed to adequately investigate the facts of the case[;] failed to consult with or call an appropriate expert witness; failed to adequately cross-examine the state witness; failed to raise issues regarding evidence presented by state witness, Richard Clapp, whom [*sic*] clearly committed perjury and presented false testimony[.]

20. Petitioner was denied due process right to a fair trial due to prosecution misconduct where he knowingly used false/perjured testimony of witness Richard Clapp, in order to obtain a conviction[.]

21. Petitioner was denied due process right to a fair trial due to prosecution misconduct where the prosecution intentionally withheld evidence/information relating to the drug field test that would have shown/prove that the drug field test used could, in fact, identify the orgin [*sic*] of the substance[.]

22. Petitioner is actually and factually innocent of possession of heroin where the original drug field test result showed cocaine instead of heroin[.]

23. Petitioner was denied the effective assistance of trial counsel where counsel failed to advise the defendant of the availability of the drug field test evidence prior to, during, or after trial[.]

ECF Doc. No. 1 at PageID# 5, 7, 8, 10, 12-15 (capitalization modified).

Respondent moved to dismiss the petition on November 23, 2016. ECF Doc. No. 5. Jackson did not file a brief in opposition.

**V.    Law and Analysis**

Respondent seeks dismissal of Jackson's habeas petition, arguing that it is barred by the statute of limitations in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). ECF Doc. No. 5.

**A.    The AEDPA Statute of Limitations**

Under AEDPA, a state prisoner must file a habeas corpus petition within one year from the latest of four circumstances:

(A) the date on which the [state-court] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or,

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

Respondent contends that Jackson's limitations period was triggered on "the date on which the judgment became final by the conclusion of direct review or the expiration

13

of the time for seeking such review . . ." under § 2244(d)(1)(A). ECF Doc. No. 5 at Page ID# 44. A judgment is "final" for purposes of § 2244(d)(1)(A) when a petitioner's petition for writ of *certiorari* in the United States Supreme Court is denied or the time in which it can be filed expires. *Lawrence v. Florida*, 549 U.S. 327, 333 (2007).

Here, the Ohio Supreme Court declined jurisdiction of Jackson's discretionary appeal on March 27, 2013. ECF Doc. No. 5-1 at Page ID# 217. Jackson's conviction became final, therefore, on June 25, 2013, when his ninety-day time period for seeking *certiorari* in the United States Supreme Court expired. *Lawrence*, 549 U.S. at 333. And under § 2244(d)(1)(A), Jackson's AEDPA limitations period began to run the following day, June 26, 2013.[3] If no statutory or equitable tolling applies to Jackson's limitations period, the last day on which he could have timely filed a habeas petition was June 26, 2014. Jackson filed his petition on July 21, 2016, more than two years late.

### B. Statutory Tolling of AEDPA's Statute of Limitations

The AEDPA statutorily tolls the filing deadline under specific circumstances. Under § 2244(d)(2), the time during which a properly filed application for state post-conviction or other collateral relief is pending is not counted against the one-year limitations period. *See* 28 U.S.C. § 2244(d)(2). To qualify for tolling, however, such state court filings must be both "pending" and "properly filed." *Id*. Untimely state court motions are not "properly filed" and do not stop the one-year clock. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). This is so even when there are exceptions to a state timely-filing requirement, such as the "good cause" exception in Ohio Appellate Rule 26(B). *Pace v.*

---

[3] *See* Fed. R. Civ. P. 6(a)(1) ("In computing any time period . . . exclude the day of the event that triggers the period."); *Bronaugh v. Ohio,* 235 F.3d 280, 285 (6th Cir. 2000) (applying Federal Civil Rule 6(a) standards to computation of time for § 2244(d) statute of limitations purposes).

*DiGuglielmo*, 544 U.S. 408, 413-14 (2005). Thus, "[w]hen a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Id.* at 414 (quoting *Carey v. Saffold*, 536 U.S. 214, 226 (2002)). Importantly, AEDPA statutory tolling "does not . . . 'revive' the limitations period (*i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period has expired, collateral-relief petitions in state court no longer serve to avoid a statute of limitations." *Winkfield v. Bagley*, 66 Fed. Appx. 578, 581 (6th Cir. 2003).

Jackson filed a motion for leave to file a delayed application to reopen his direct appeal in the state court of appeals under Ohio Appellate Rule 26(B) on July 11, 2013, after his AEDPA limitations had begun to run on June 26, 2013. ECF Doc. No. 5-1 at Page ID# 218-47. A Rule 26(B) application to reopen is a collateral proceeding which can toll AEDPA's statute of limitations under § 2244(d)(2) if "properly filed." *See, e.g., Lopez v. Wilson*, 426 F.3d 339, 352 (6th Cir. 2005) ("[A] Rule 26(B) application to reopen is a collateral matter rather than part of direct review."). But the state appellate court denied Jackson's motion for leave to file his delayed application because it was untimely and he did not demonstrate "good cause" for the delay (as required to fall within the rule's exception to its filing deadline). ECF Doc. No. 5-2 at Page ID# 274-78; *see also* Ohio R. App. P. 26(B)(1). Jackson unsuccessfully requested reconsideration of the judgment. ECF Doc. No. 5-2 at Page ID# 279. And the Ohio Supreme Court declined jurisdiction over the case. ECF Doc. No. 5-2 at Page ID# 299. Jackson's reopening application therefore was untimely. Because of this, it was not "properly filed" and did not toll the AEDPA statute of limitations under § 2244(d)(2). *Artuz*, 531 U.S. at 8; *Pace*, 544 U.S. at 413-14.

The same analysis applies to Jackson's March 11, 2014 trial court motion for leave to file a delayed motion for new trial and/or post-conviction relief. ECF Doc. No. 5-2 at Page ID# 300-04. The trial court denied Jackson's motion and dismissed the petition as untimely. ECF Doc. No. 5-1 at Page ID# 343-48. That decision was upheld on appeal. ECF Doc. No. 5-2 at Page ID# 422-35, 456. Jackson's untimely motion for new trial/post-conviction petition, therefore, also was not "properly filed" and did not toll the AEDPA statute of limitations under § 2244(d)(2).

### C. Equitable Tolling of the AEDPA Statute of Limitations

AEDPA's statute of limitations is also subject to equitable tolling in appropriate cases. *Holland v. Florida*, 560 U.S. 631, 645 (2010). Equitable tolling "allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010) (internal quotation marks omitted). A habeas petitioner bears the burden of demonstrating he is entitled to equitable tolling. *See, e.g., McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003). To do so, the petitioner must show that (1) "he has been pursuing his rights diligently," and (2) that "some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649.

As Respondent points out, Jackson has not met his burden of showing that he is entitled to equitable tolling. *See* ECF Doc. No. 5 at Page ID# 48-51. The record demonstrates that Jackson did not diligently pursue his claims in either the state courts or in this court. He filed his state appellate court Rule 26(B) reopening application some five months after the deadline. After his appeal of the state appellate court's denial of his

16

request for leave to file a delayed application was dismissed on December 24, 2013, he still had more than six months in which to file a timely federal habeas petition. But he did not. Instead, on March 11, 2014, he filed an untimely state motion for new trial/post-conviction petition. And he filed an untimely appeal in the Ohio Supreme Court of the state appellate court's affirmance of that decision. Jackson then waited eight more months after his post-conviction appeals were exhausted, on November 10, 2015, before he filed his habeas petition on July 21, 2016.

Because Jackson has not opposed Respondent's motion to dismiss, he has neither responded to the Warden's arguments nor otherwise identified any grounds for an equitable tolling argument. The face of Jackson's petition sets forth no circumstances outside Jackson's control that explain why he failed to timely file his federal habeas petition. *See, e.g., Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001) ("Although liberal construction requires active interpretation of the filings of a pro se litigant, . . . it . . . does not require a court to conjure allegations on a litigant's behalf . . . .") (internal citations omitted).

### D. Actual Innocence Exception to AEDPA's Limitations Statute

Finally, habeas petitioners may be entitled to an equitable exception to the AEDPA statute of limitations under the "actual innocence" or "miscarriage of justice" gateway to federal habeas review set forth in *Schlup v. Delo*, 513 U.S. 298 (1995). *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). "[T]enable actual –innocence gateway pleas are rare," however, as a petitioner "'must persuade[] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id*. (quoting *Schlup*, 513 U.S. at 329). Actual

17

innocence claims require a showing of "new reliable evidence" and factual innocence, not mere legal insufficiency. *See Schulp*, 513 U.S. at 324; *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Jackson offers no new, reliable evidence to show he is "actually innocent" of the crimes for which he was convicted either in an opposition brief to Respondent's motion to dismiss or in his habeas petition. The actual innocence exception to AEDPA's limitations statute, therefore, also does not apply here.

## VI. Recommendation Regarding Certificate of Appealability

### A. Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983)); *accord Slack v. McDaniel*, 529 U.S. 473, 483-484 (2000). The

statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks the requirement of § 2253(c)(3) that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a). In light of the Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B. Analysis

Where, as here, a petition is to be dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold. In such cases, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 485 (emphasis added). As the Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id*. at 486.

If the Court accepts the foregoing recommendation, George cannot show that the Court's ruling on the procedural question is reasonably debatable. As noted above, Jackson has not denied that his petition is untimely, and he has provided no basis for concluding that

he is entitled to a delayed commencement of the limitations period under § 2244(d)(1)(B), (C) or (D), that he is entitled to statutory tolling under § 2244(d)(2), or that he is entitled to equitable tolling. Nor has Jackson submitted new, reliable evidence demonstrating that his is the rare petition which should be granted habeas review, despite its untimeliness, because he is actually innocent. Thus, the resolution of the limitations issue is not reasonably debatable, and the Court should conclude that Jackson is not entitled to a certificate of appealability.

### VII. Recommendation

Petitioner Gregory Jackson filed his petition for writ of habeas corpus more than two years after the AEDPA statute of limitations expired. He has presented no arguments or evidence to demonstrate that he is entitled to statutory or equitable tolling, or that he is actually innocent. I recommend that the Court GRANT Respondent's motion to dismiss and DISMISS Jackson's petition.

Dated: June 22, 2017

Thomas M. Parker
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).